IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| COREY THOMAS,           ) | |
| ) | |
| Plaintiff,           ) | |
| ) | |
| v.           ) | CIVIL ACTION NO. 07-0146-CG-C |
| ) | |
| NELSON MARINE SERVICE, INC.,           ) | |
| and MARIGOLD TUGS, INC.,           ) | |
| ) | |
| Defendants.           ) | |

## MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendants, Nelson Marine Services, Inc. and Marigold Tugs, Inc., for summary judgment as to plaintiff's negligence claim under the Jones Act and plaintiff's claim of unseaworthiness (Doc. 35), plaintiff's opposition thereto (Doc. 42), and defendants' reply (Doc. 44). The court finds that plaintiff has failed to show that defendants were negligent, or that their negligence caused plaintiff's injury. The court further finds that plaintiff has failed to show the existence of an unseaworthy condition or that the unseaworthy condition caused plaintiff's injury. Therefore, defendants' motion is due to be **GRANTED.**

## FACTS

This case arises from plaintiff's slip and fall on September 3, 2006, while aboard a tug boat named the MISS MARION. The parties have agreed to the following facts:[1]

> As [plaintiff, Corey Thomas,] was preparing the MISS MARION to make up with a barge on the Mobile River, the Plaintiff stepped backward without looking, and allegedly tripped over a sounding tube protruding from the deck of the MISS

---

[1] The parties' included these facts in their "STATEMENT OF THE CASE" section of their joint pretrial document. (Doc. 49).

      MARION.  The Plaintiff fell backward, knocked an axe from its holding on the boat, and landed on the deck of the MISS MARION. The Plaintiff allegedly injured his tailbone in the fall and also received a small puncture wound to his leg left from the axe.

          Following the accident the Plaintiff was treated in the Emergency Room at the University of South Alabama. He was given a tetanus shot, but no stitches, for the puncture wound to his leg.  Additionally, x-rays were done on his tailbone. The x-rays were normal, and he was released that same day. One month later, the Plaintiff went to the Alabama Orthopedic Clinic for the alleged injury to his tailbone. He saw a doctor at the Alabama Orthopedic Clinic three times and also received physical therapy. On December 7, 2006, his doctor at the Alabama Orthopedic Clinic gave him a full medical release with no restrictions. Thereafter, the Plaintiff returned to work with another employer, and has been working ever since.

When initially hired, Plaintiff was given videos and materials related to work activities performed by deckhands, which he watched before starting work on a tugboat. (Thomas Depo. pp. 98-102).  Plaintiff was also provided with safety videos which he watched, and safety rules, which he read and was obligated to follow. (Thomas Depo. pp. 153-156).  One of the points stressed in the safety videos and in safety meetings was to always watch where he placed his foot while working on a tug or a barge, whether walking forward or stepping backward; otherwise he could trip and fall. (Thomas Depo. pp. 157-158).  Thomas received on-the-job training by an experienced deckhand and had been working as a deckhand for approximately five and a half months and considered himself to be a well-trained deckhand at the time of the accident. (Thomas Depo. pp. 98-102).

On the day of the accident, MISS MARION's captain was Captain Fred Cleveland, a licensed, trained, experienced and good Captain. (Thomas Depo. pp. 93-95).  The job of the M/V MISS MARION and her crew at the time of the accident was to move or shift a barge that had just been loaded with coal, a routine job that plaintiff had performed many times during his shift

that night and during the five and a half months he worked for Nelson Marine. (Thomas Depo. pp. 110-112). Plaintiff admits that the crew had a sufficient number of men to perform the job and all of the necessary equipment to perform the job. (Thomas Depo. pp. 93, 95).

The purpose of the sounding tube or pipe which plaintiff tripped over is to allow access to measure the water level in the collision bulkhead on the M/V MISS MARION. It has been present and part of the MISS MARION since the vessel was originally designed and constructed in 1980. (Nelson Affid. ¶ 2). Plaintiff knew the sounding pipe was present on the deck and had been aware of its presence since his first day of work on MISS MARION. (Thomas Depo. p. 124-125). Plaintiff did not know what the pipe was for, but admitted that the pipe was obvious. (Thomas Depo. p. 125-126).

Plaintiff testified that he did not think he would have tripped if he had looked back where he was stepping with his right foot. (Thomas Depo. pp. 129, 147). Plaintiff had never tripped on or complained about the sounding pipe before and neither had anyone else during the 22 years the vessel had been operated by Nelson Marine. (Thomas Depo. pp. 126-127, Nelson Affid. ¶ 4).

According to plaintiff, the only thing unsafe about the M/V MISS MARION is that the sounding pipe is a tripping hazzard and the axe that fell on him did not have a security clip. (Thomas Depo. p. 149). When the plaintiff tripped and fell, he reached back and "slapped" the axe and it came down. (Thomas Depo. p. 165). Plaintiff is not aware of the axe ever falling off the wall before and is also unaware of any prior complaints concerning the axe. (Thomas Depo. p. 166). Plaintiff testified that there were no lights shining on his work area and that he did not have the use of a flashlight but that he did not need a flashlight to safely do the job he was performing the night of the accident. (Thomas Depo. pp. 129-130, 210). The night of the accident, the

lighting conditions were the same in the area plaintiff was working in as they had been every other night shift plaintiff had worked. (Thomas Depo. p. 131).

## LEGAL ANALYSIS

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted: "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting Anderson, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, at 249-250. (internal citations omitted).

The basic issue before the Court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." See Anderson, 477 U.S. at 251-252. The moving party bears the burden of proving that no genuine issue of material fact exists. O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001). In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir.1999). "If reasonable minds could differ on the inferences arising

from undisputed facts, then a court should deny summary judgment." <u>Miranda v. B&B Cash Grocery Store, Inc.</u>, 975 F.2d 1518, 1534 (11th Cir. 1992) (citing <u>Mercantile Bank & Trust v. Fidelity & Deposit Co.</u>, 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." <u>Howard v. BP Oil Company</u>, 32 F.3d 520, 524 (11th Cir.1994)(citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986)). Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." <u>See</u> <u>Clark v. Coats & Clark, Inc.</u>, 929 F.2d 604, 608 (11th Cir. 1991). The non-moving party "may not rest on the mere allegations or denials of the [non-moving] party's pleading, but .... must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e)  "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." <u>Walker v. Darby</u>, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." <u>Tipton v. Bergrohr GMBH-Siegen</u>, 965 F.2d 994, 998 (11th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574 at 587 (1986) (internal quotation and citation omitted).

**B. Claims Asserted**

Defendants move for summary judgment as to plaintiff's negligence and unseaworthiness claim. Plaintiff has sued Nelson Marine Service, Inc., his employer at the time of the accident and the operator of the MISS MARION, and Marigold Tugs, Inc., the owner of the MISS MARION. The plaintiff claims that Nelson Marine Service, Inc. was negligent in allowing the sounding tube to protrude from the deck of the MISS MARION and in not properly securing the

axe aboard the MISS MARION. The Plaintiff also claims that these conditions aboard the MISS MARION violated Marigold Tugs, Inc. and Nelson Marine Service, Inc.'s duty to provide him with a seaworthy vessel. As damages, the Plaintiff is seeking lost wages, pain and suffering, mental anguish, and loss of enjoyment of life.  The Defendants maintain that they were not guilty of any negligence and that the M/V MISS MARION was seaworthy.

**1. Jones Act**

The first claim to which defendants seek summary judgment is plaintiff's negligence claim under the Jones Act which provides a remedy to "any seaman" who is injured during "the course of his employment." 46 U.S.C. § 688.  Under the Jones Act, a seaman's employer is liable for damages if the employer's negligence caused the seaman's injuries. Gautreaux v. Scurlock Marine, 107 F.3d 331, 335 (5th Cir. 1997).  However, liability does not attach to a Jones Act employer for injuries suffered by its employees absent proof that the injury occurred during the course of employment, that there was negligence on the part of the employer, and that such negligence was the cause of the injury. See Hernandez v. Trawler Miss Vertie May, Inc., 187 F.3d 432, 436 (4th Cir. 1999) (citing Gautreaux, 107 F.3d at 335).   While the employer's negligence need not be the sole cause of the injury and may play "any part, even the slightest," in producing the injury, "there must be a sufficient showing (i.e., *more than a possibility*) that a causal relation existed."  Mayhew v. Bell S.S. Co., 917 F.2d 961, 963 (6th Cir. 1990) (citations omitted).

A Jones Act employer is held to the standard of care of ordinary prudence under the circumstances. Gautreaux, 107 F.3d at 338.  A seaman is also "obligated under the Jones Act to act with ordinary prudence under the circumstances." Id. at 339.  "The circumstances of a seaman's employment include not only his reliance on his employer to provide a safe work environment but also his own experience, training, or education." Id.

Defendants point out that this court addressed a similar case in Moore v Iron Will, Inc., 2001 WL 228352, (S.D.Ala. Feb. 21, 2001).  In Moore, the plaintiff injured his hand in the course of his regular duties aboard a vessel when he used a cathead to pull a net from the water and his

left hand was pulled into the winch drum.  The plaintiff claimed that the defendant was negligent and that the vessel was unseaworthy because there was no reasonably accessible means of shutting of the winch.   This court found that the plaintiff's negligence was the sole cause of his accident because the plaintiff testified that the crew was not at fault, "that he could have taken wraps off the cathead without putting his left hand near the feed line," "that he was using only his right hand to take the wraps off," and "that he could have turned the cathead off before taking the wraps off, and, that if he had done that, he would not have been injured." Id. at *3, n. 9.  The court stated that  all of the vessel's equipment was functioning properly and that "the defendant did not have a duty to foresee his injury or a duty to devise/install a switch he could have used to turn off the cathead." Id. at *3.  The defendant in Moore "was not required to furnish the Plaintiff with a place to work which was absolutely safe because the Defendant's duty was only to exercise reasonable and ordinary care to provide a reasonably safe place for the Plaintiff to perform the work he was performing at the time of the accident." Id.

In the instant case, as in Moore, the plaintiff testified that the crew members on the M/V MISS MARION were not at fault and that had he performed his work with reasonable care (ie. if he had looked before stepping as he had been trained) then he would not have tripped and fallen. Additionally, plaintiff had all the equipment necessary to perform his job without injury, he had performed the same job on the very night of the accident without injury, had routinely performed the same job over the last 5 or 6 months without injury, and he was well aware of the presence of the sounding pipe, which he admits was obvious.  Defendants had no reason to foresee plaintiff's injury as there had been no prior injuries from or complaints regarding the safety of the sounding pipe or the axe.  There is no evidence, expert or otherwise, that the sounding pipe is unreasonably hazardous or that the axe was inadequately affixed to the wall, other than the fact that plaintiff tripped and the axe came off when he grabbed at it while falling.

Plaintiff makes much of the fact that the sounding pipe is not used on a regular basis, but assuming that is true, that does not change the fact that plaintiff's injury was caused solely by his

own negligence. Plaintiff has not proffered any evidence that his injury was caused by defendants' negligence.

Plaintiff also points to the lack of lighting in the area where plaintiff performed his work. However, as this court found in Moore, defendants are not required to provide plaintiff with an absolutely safe workplace, but must simply exercise reasonable and ordinary care to provide a reasonably safe place for the plaintiff to work. As stated above, plaintiff had performed his work for about five and a half months under the same conditions without injury and without complaint; nor is there any evidence that any other seamen were injured or complained. Thus, the court finds that plaintiff has failed to show that defendants were negligent, or that their negligence caused plaintiff's injury.

### 2. Unseaworthiness

Unseaworthiness is a claim under general maritime law based on the vessel owner's duty to ensure that the vessel is reasonably fit to be at sea. See Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 550, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960). "For liability to exist, a plaintiff must first establish the existence of an unseaworthy condition on board the vessel and then demonstrate the unseaworthy condition to be the proximate cause of his injury." Napier v. F/V DEESIE, Inc., 454 F.3d 61, 68 (1st Cir. 2006) (citation omitted); see also Churchwell v. Bluegrass Marine, Inc., 444 F.3d 898, 904 (6th Cir. 2006) ("To prevail on an unseaworthiness claim, a plaintiff must establish that a vessel's unseaworthy condition was the proximate cause of his or her injuries." citation omitted); Britton v. U.S.S. Great Lakes Fleet, Inc., 302 F.3d 812, 818 (8th Cir. 2002) ("The burden of proof in demonstrating unseaworthiness rests on the plaintiff, who must show by a preponderance of the evidence that the unseaworthiness was a proximate cause of the injury." citation omitted); Hernandez v. Trawler Miss Vertie Mae, Inc., 187 F.3d 432, 439 (4th Cir. 1999) ("Without the requisite showing of proximate cause between a mechanical defect on the vessel and his injury, Hernandez' unseaworthiness claim fails"). The court finds that plaintiff's unseaworthiness claim fails for the same reason his Jones Act claim fails - he has produced

insufficient evidence of causation. See Samanski v. Mobile Seafood Co., 258 F.2d 823 (5th Cir. 1958)[2] (finding that insufficiency of the proof of causation disposed of both plaintiff's Jones Act and unseaworthiness claims). Additionally, the court finds that plaintiff has failed to establish the existence of an unseaworthy condition. As discussed above with regard to plaintiff's negligence claim, plaintiff has presented no evidence that either the sounding pipe or the axe was unreasonably hazardous other than the fact that plaintiff injured himself through his own negligence. A reasonable juror could not find from the evidence presented that an unseaworthy condition caused plaintiff's injury. Therefore, summary judgment is due to be granted in favor of defendants as to plaintiff's unseaworthiness claims.

## CONCLUSION

For the reasons stated above, defendants' motion for summary judgment (Doc. 35) is **GRANTED,** and plaintiff's negligence claim under the Jones Act and plaintiff's unseaworthiness claim are hereby **DISMISSED**.

The parties are **ORDERED** to advise the court, no later than **February 27, 2008**, whether the maintenance and cure claim is still at issue in the case. If it is not, final judgment will be entered in accordance with this Order.

**DONE and ORDERED** this 21st day of February, 2008

/s/ Callie V. S. Granade
CHIEF UNITED STATES DISTRICT JUDGE

---

[2] Decisions of the Former Fifth Circuit filed prior to October 1, 1981, constitute binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).